UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SILVIA SEIJAS, et al,                           :     04 Civ. 400 (TPG)
                          Plaintiffs,           :
          -against-                             :
                                                :
THE REPUBLIC OF ARGENTINA,                      :
                          Defendant.            :
------------------------------------------------------------------x
SILVIA SEIJAS, et al,                           :     04 Civ. 401 (TPG)
                          Plaintiffs,           :
          -against-                             :
                                                :
THE REPUBLIC OF ARGENTINA,                      :
                          Defendant.            :
------------------------------------------------------------------x
CESAR RAUL CASTRO,                              :     04 Civ. 506 (TPG)
                          Plaintiff,            :
          -against-                             :
                                                :
THE REPUBLIC OF ARGENTINA,                      :
                          Defendant.            :
------------------------------------------------------------------x
HICKORY SECURITIES LTD.,                        :     04 Civ. 936 (TPG)
                          Plaintiff,            :
          -against-                             :
                                                :
THE REPUBLIC OF ARGENTINA,                      :
                          Defendant.            :
------------------------------------------------------------------x

**MEMORANDUM OF LAW
IN SUPPORT OF CLASS PLAINTIFFS'
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

```
------------------------------------------------------------------------X
ELIZABETH ANDREA AZZA, et al,              .    04 Civ. 937 (TPG)
                            Plaintiffs,    :
        -against-                          :

THE REPUBLIC OF ARGENTINA,                 :
                            Defendant.     :
------------------------------------------------------------------------x
ELIZABETH ANDREA AZZA, et al.,             :    04 Civ. 1085 (TPG)
                            Plaintiffs,    :
        -against-                          :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                            Defendant.     :
------------------------------------------------------------------------
EDUARDO PURICELLI,                         x
                            Plaintiff,     :    04 Civ. 2117 (TPG)
        -against-                          :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                            Defendant.     :
-----------------------------------------------------------------------:
RUBEN DANIEL CHORNY,                       x
                            Plaintiff,     :    04 Civ. 2118 (TPG)
        -against-                          :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                            Defendant.     :
                                           :
------------------------------------------------------------------------x
```

PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
(212) 969-3000

LAW OFFICES OF SAUL ROFFE, ESQ.
52 Homestead Circle
Marlboro, NJ  07746
(732) 616-1304

DIAZ REUS & TARG LLP
100 S.E. 2nd Street, Suite 3400
Miami, FL 33131
(305) 375-9220
*Co-Lead Counsel for Plaintiff Classes*

Plaintiffs in the above-captioned class actions (the "Plaintiff Classes") respectfully submit this memorandum of law in support of their motion for preliminary injunctive relief, which seeks essentially identical relief to that granted to the plaintiffs in the *NML* cases[1] to protect the *pari passu* rights of the Plaintiff Classes pending final judgment in these cases.

## I. PRELIMINARY STATEMENT

The grounds on which this preliminary injunction is sought are virtually identical to those on which this Court awarded injunctive relief in the *NML* cases. The Plaintiff Classes hold bonds issued pursuant to the 1994 Fiscal Agency Agreement ("FAA") and, therefore, Argentina should be enjoined from violating the *pari passu* provisions of the FAA, including by making any payment under the terms of the Exchange Bonds[2] (or other External Indebtedness) without complying with its obligation pursuant to Paragraph 1(c) of the FAA by concurrently or in advance making a Ratable Payment[3] with respect to the Plaintiff Classes. The only difference is that, here, preliminary relief is sought on behalf of the Plaintiff Classes pending final determination of the scope and size of these Plaintiff Classes. Accordingly, the motion seeks a preliminary injunction that would require any Ratable Payments to be calculated based on the

---

[1] *NML Capital Ltd. v. Republic of Argentina*, 08-cv-6978, 09-cv-1707, 09-cv-1708.

[2] "Exchange Bonds" means any bonds or other obligations issued pursuant to Argentina's 2005 or 2010 Exchange Offers, or any subsequent exchange of or substitution for the 2005 or 2010 Exchange Offers that may occur in the future, to the extent such Exchange Bonds constitute "External Indebtedness" as that phrase is defined in Para. 11 of the FAA. For the avoidance of doubt, Exchange Bonds are not limited to bonds payable through the Bank of New York Mellon as Indenture Trustee because the definition of External Indebtedness under the FAA is not so limited.

[3] "Ratable Payment" has the same meaning and formula as set forth in the Amended February 23, 2012 Order entered in the *NML* cases on November 21, 2012 and the Court's Opinion that same day in the *NML* cases.

1

pre-opt out Plaintiff Classes[4] and to be made into escrow accounts (one for each Class) to be held on behalf of the Plaintiff Classes.

## II. RELEVANT BACKGROUND

The Court is familiar with the FAA, the *pari passu* clause, and Argentina's violations and attempted violations of its obligations to treat bondholders equally. We recap the relevant facts briefly here.

In 1994, Argentina began issuing sovereign bonds pursuant to the FAA (the "FAA Bonds"). *See NML Capital, Ltd. v. Republic of Arg.*, 699 F.3d 246, 251 (2d Cir. 2012) ("*NML I*"). The FAA contains a *pari passu* clause, which requires Argentina to "treat the FAA Bonds at least equally with its other external indebtedness."[5] *NML Capital, Ltd. v. Republic of Arg.*, 727 F.3d 230, 237 (2d Cir. 2013), *cert. denied*, 2014 U.S. LEXIS 4259 ("*NML II*").

Argentina defaulted on the FAA Bonds in 2001. *See NML I*, 699 F.3d at 251. Following its default, Argentina "offered holders of the FAA Bonds new exchange bonds in 2005 and 2010 (the "Exchange Bonds")." *Id.* Despite the FAA's *pari passu* clause requiring equal treatment between the FAA Bonds and any other external indebtedness, Argentina made payments to holders of Exchange Bonds that constituted external indebtedness, yet failed to make payments to holders of the defaulted FAA Bonds (the "FAA Bondholders") (and, indeed, enacted legislation specifically forbidding payment on the FAA Bonds). *Id.* In doing so, as this Court and the Second Circuit have held, "Argentina breached the *Pari Passu* Clause of the FAA." *Id.* at 250; *see also NML II*, 727 F.3d at 237.

---

[4] The pre-opt out Class sizes are readily calculable based on the volume of bonds still outstanding in each Class Bond series, less the amounts of any Class Bonds still at issue in any separately pending lawsuits or arbitrations filed before the Court's April 24, 2014 Order certifying the modified "holder classes."

[5] This language is also referred to as the "Equal Treatment Provision."

2

On November 21, 2012, this Court issued amended injunctions in the *NML* cases that, among other things, prohibit Argentina from "violating Paragraph 1(c) of the FAA [the *pari passu* clause], including by making any payment under the terms of the Exchange Bonds without complying with its obligation pursuant to Paragraph 1(c) of the FAA by concurrently or in advance making a Ratable Payment to NML."[6]  The Second Circuit agreed that the injunctions properly required that, "if Argentina pays Exchange Bondholders 100% of what has come due on their bonds at a given time, it must also pay plaintiffs 100% of the . . . principal and accrued interest that they are currently due."[7]  *NML II*, at 238-39, 248.  On June 16, 2014, the Supreme Court denied Argentina's petition for certiorari with respect to the injunctions.  *See* 2014 U.S. LEXIS 4259.

As the Court is well aware, Argentina has since then repeatedly indicated by word and deed that it will not comply with the *NML* injunctions or Argentina's *pari passu* obligations.  To the contrary, Argentina has actively sought to violate and or circumvent the *NML* injunctions, as well as Argentina's contractual *pari passu* obligations.

### A.   Procedural History

In 2004, Plaintiffs commenced these eight class actions against Argentina, alleging violations of the FAA, to recover in full on the Class Bonds.  On August 5, 2005, the Court certified the eight classes, which consisted of "bondholders who purchased Argentine bonds prior to the filing of the class action for each respective bond series and who held such bonds continuously until entry of judgment by the district court" – the "continuous holder" classes.

---

[6] Amended February 23, 2012 Order, 08-cv-06978, Dkt. No. 425 (the "*NML* Injunctions").

[7] "Under the express terms of the FAA, as negotiated and agreed to by Argentina, the amount currently due on the FAA Bonds, as a consequence of its default, is the outstanding principal and accrued interest."  *NML II*, 727 F.3d at 238.

3

On the uncontested evidence that Argentina had repudiated its obligations under the bonds, the District Court granted summary judgment and subsequently entered judgments based on estimates of the amounts owed each class. On Argentina's appeal, the Second Circuit affirmed class certification, but vacated the judgments and remanded for further proceedings on damages. On remand, the Court specifically enforced the FAA by accelerating certain Class Bonds that had not yet matured. Following submission of renewed damages calculations, the Court entered new judgments in 2011. Argentina again appealed. The Second Circuit remanded with instructions on how to address damages under the continuous holder definition.

While engaging in discovery on remand, it became clear that calculating damages under the continuous holder class definition would be extremely burdensome and time-consuming. In light of these developments, Plaintiffs moved to modify the class definitions. Following briefing and a hearing, the District Court granted Plaintiffs' motions, certifying eight "holder" classes. Argentina filed a petition pursuant to Federal Rule of Civil Procedure 23(f) seeking leave to appeal the orders modifying the class definitions. On June 18, 2014, the Second Circuit granted Argentina's petition. Briefing on that appeal will not commence until October 2014.

## III.   ARGUMENT

The Plaintiff Classes here should stand on the same footing as the *NML* and other plaintiffs for whom *pari passu* injunctions have been granted. Accordingly, the Plaintiff Classes respectfully request that the Court issue a preliminary injunction, similar to the *NML* injunctions enjoining Argentina from violating its *pari passu* obligations, including by making payments to Exchange Bondholders without making ratable payments with respect to the Class Bonds. Until a final determination is made of the size of each Class, the ratable payment can be calculated

based on the presumptive Class size (pre-opt out) and deposited into escrow accounts (one account for each Class).[8]

### A. Argentina is Barred from Re-litigating the Issues Decided in *NML*

This Court (affirmed by the Second Circuit) has already resolved all the legal issues relevant to the Plaintiff Classes' request for preliminary injunctive relief.

In sum, the FAA contains a *pari passu* clause, which "dictate[s] a certain result"— "whenever Argentina pays on the [Exchange Bonds], the Republic must also make a 'ratable payment' to plaintiffs who hold defaulted FAA Bonds." *NML II*, 727 F.3d at 237. Here, the Plaintiff Classes hold FAA Bonds. *Hickory Secs. Ltd.*, 493 F. App'x at 160-61. Accordingly, "if Argentina pays Exchange Bondholders 100% of what has come due on their bonds at a given time, it must also pay plaintiffs 100% of the . . . principal and accrued interest that they are currently due." *NML II*, 727 F.3d at 238.

The doctrine of collateral estoppel bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *NML Capital, Ltd. v. Banco Central de la Republic of Arg.*, 652 F.3d 172, 185 (2d Cir. 2011) (internal quotation omitted); *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008). Here, collateral estoppel bars Argentina from relitigating what this Court (as well as the Second Circuit) has already decided—that FAA Bondholders satisfy the requirements for injunctive relief and an injunction is necessary to enforce the FAA's *pari passu* clause.

### B. The Plaintiff Classes Satisfy the Legal Standard for a Preliminary Injunction

To obtain a preliminary injunction, a party must demonstrate: "(1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question

---

[8] While it may be the case that some holders will opt-out of the Plaintiff Classes, there is no reason to believe that they would not want to protect their *pari passu* rights in the meantime.

going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiffs favor; and (3) that the public's interest weighs in favor of granting an injunction." *Singas Famous Pizza Brand Corp. v. New York Adver. LLC*, 468 F. App'x 43, 45 (2d Cir. 2012) (internal quotation omitted). Where previous violations have occurred, district courts generally have broad discretion to issue injunctions to prevent potential future violations. In such circumstances, "[c]ourts are free to assume that past misconduct is highly suggestive of the likelihood of future violations." *Henrietta D. v. Bloomberg,* 331 F.3d 261,290 (2d Cir. 2003) (internal quotation omitted). Here, there is no need to assume that there will be future violations: Argentina has made clear that it will continue to seek ways to pay Exchange Bondholders, but not FAA Bondholders, such as the Plaintiff Classes.

          **1.**     **<u>Irreparable Harm</u>**

The Court has held that FAA Bondholders "would suffer irreparable harm" absent equitable relief. *See* NML Injunctions, ¶ 1.a. This is because, without an injunction, the contractually-guaranteed *pari passu* status of Argentina's payment obligations to FAA Bondholders "would remain debased" and they "would never be restored to the position [they were] promised that [they] would hold relative to other creditors in the event of default." *Id*. The Court further explained that "[t]here is no adequate remedy at law" for Argentina's continued violation of the *pari passu* clause, because Argentina "has made clear—indeed, it has codified in Law 26,017 and Law 26,547—its intention to defy any money judgment issued by this Court." *See id.* ¶ 1.b. The Second Circuit affirmed these findings. *NML I*, 699 F.3d at 250; *NML II*, 727 F.3d at 237.

Following the Second Circuit's affirmance of the *NML* Injunctions, Argentina has made even clearer that it has no intention to honor the *pari passu* clause. For example, Argentina

deposited over $500 million with the Bank of New York Mellon, plus additional substantial sums with Citibank and JP Morgan, all with respect to Argentina's payment obligations on the Exchange Bonds. Yet no ratable payment was made in respect of any FAA Bonds, including to any members of the Plaintiff Classes.

Put simply, it is well-settled that Argentina's violation of the FAA's *pari passu* clause constitutes irreparable harm to FAA Bondholders. *See NML I*, 699 F.3d at 250; *NML II*, 727 F.3d at 237. The doctrine of collateral estoppel bars Argentina from arguing otherwise here. *NML Capital, Ltd.*, 652 F.3d at 185.

### 2. Success on the Merits and Balance of the Equities

The Plaintiff Classes are likely to succeed on the merits, and the balance of the equities tips decidedly in the Plaintiff Classes' favor.

First, there is no dispute regarding the merits: Argentina does not contest its liability to FAA Bondholders, and it is collaterally estopped from contesting its *pari passu* obligations.[9]

Second, as the Court held in *NML*, the balance of the equities strongly supports the need for the injunctions "in light of the clear text of" the *pari passu* clause and Argentina's "repeated failures to make required payments." *NML* Injunctions, ¶ 1.c. As the Court has found, Argentina will continue violating the *pari passu* clause "with impunity" absent an injunction, thus subjecting FAA Bondholders to harm. *Id.* By contrast, Argentina suffers no harm from

---

[9] There is no dispute that the Plaintiff Classes have brought these actions pursuant to the FAA and, indeed, the Court has enforced the FAA with respect to venue, sovereign immunity waiver, choice of law, and acceleration. Moreover, Argentina has repeatedly acknowledged that its *pari passu* obligations run to all FAA bondholders, not just those in the *NML* cases, and require that it treat all FAA bondholders equally. *See, e.g.,* 7/22/14 Hearing Tr., pages 51-52 (Counsel for Argentina confirming that the *pari passu* obligations mean Argentina must make a "global offer" to all FAA bondholders). Thus, enforcement of the *pari passu* clause is properly before the Court and there is no need to amend the Complaints to state a separate cause of action with respect to *pari passu* treatment. However, the Plaintiff Classes will do so should the Court deem it necessary.

injunctions requiring compliance with the *pari passu* clause, which merely requires of Argentina that which it has already promised—equal treatment of foreign indebtedness.  *Id.*

Third, this Court also already found in the *NML* cases (affirmed by the Second Circuit) that Argentina "has the financial wherewithal to meet its commitment of providing equal treatment" not only to the NML Plaintiffs but to "similarly situated creditors."  The Plaintiff Classes are "similarly situated creditors."  While the exact size of the Plaintiff Classes remains to be determined, the aggregate amount calculated to be owed in judgments entered for the "continuous holder" classes was approximately $700 million – less than what the NML Plaintiffs claim to be owed.  Thus, as the Court previously determined in *NML*, it is equitable to require Argentina to honor its obligation to treat the Plaintiff Classes equally to the Exchange Bond holders.  "Indeed, equitable relief is particularly appropriate here, given that the Republic has engaged in an unprecedented, systematic scheme of making payments on other external indebtedness, after repudiating its payment obligations to [FAA Bondholders], in direct violation of its contractual commitment set forth in" the *pari passu* clause.  *Id.*

### 3. Public Interest

Finally, the Court has held that "[t]he public interest of enforcing contracts and upholding the rule of law will be served by the issuance of" injunctive relief, "particularly here, where creditors of the Republic have no recourse to bankruptcy regimes to protect their interests and must rely upon courts to enforce contractual promises."  *See NML* Injunction, ¶ 1.d.  The Court concluded that "[n]o less than any other entity entering into a commercial transaction, there is a strong public interest in holding the Republic to its contractual obligations."  *Id.*  The Second Circuit agreed, and it stated that Argentina's arguments to the contrary "are speculative, hyperbolic, and almost entirely of the Republic's own making."  *See NML II*, 727 F.3d at 246.

For the same reasons, here, the injunctions sought by the Plaintiff Classes are also in the public interest. And, at any rate, Argentina is collaterally estopped from arguing otherwise.

## CONCLUSION

For all the reasons stated herein, the Plaintiff Classes should be granted preliminary injunctive relief, barring Argentina from making any payments on the Exchange Bonds absent a Ratable Payment with respect to the Class Bonds into escrow accounts (one for each Class) pending final determination of the size of each Class.

Dated:   New York, New York
         July 24, 2014

By: /s/ Jennifer R. Scullion

Jennifer R. Scullion
M. Todd Mobley
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
(212) 969-3000
jscullion@proskauer.com

Saul Roffe
Law Offices of Saul Roffe, Esq.
52 Homestead Circle
Marlboro, NJ 07746
(732) 375-9220
sroffe@gmail.com

Michael Diaz, Jr.
Carlos F. Gonzalez
Marta Colomar-Garcia
DIAZ REUS & TARG LLP
100 S.E. 2nd Street
Suite 2600
Miami, FL 33131
(305) 375-9220
mdiaz@diazreus.com
cgonzalez@diazreus.com
mcolomar@diazreus.com
*Co-Lead Counsel for Plaintiffs*

9